# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ELIZABETH LUPACCHINO** | : | **CIVIL ACTION NO:** |
| **Plaintiff** | : | **3:02 CV 2281 (MRK)** |
| | : | |
| **vs.** | : | |
| | : | |
| **ADP, INC. a/k/a AUTOMATIC** | : | |
| **DATA PROCESSING, INC.** | : | |
| **Defendant** | : | **JUNE 25, 2004** |

## PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT

## I.    Admissions And Denials For Purposes Of Summary Judgment[1]

1.    Denied. Ex. 1, Letter Terminating Salary 2/22/02.[2]

2.    Denied. Plaintiff's Complaint Counts One to Four.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Admitted.

---

[1] Certain nuances of the language chosen by the defendant, along with the potentially misleading presentation of the sequence of facts would permit the plaintiff to deny many of the facts admitted herein. However, since such matters should have no bearing on the Court's consideration of the pending Motion the "facts" are admitted for the purposes of the pending Motion only.

[2] References to exhibits are to the exhibits submitted with the Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment.

7.   Admitted.

8.   Admitted.

9.   Admitted.

10.  Admitted.

11.  Admitted, however, the sequence is wrong.

12.  Admitted.

13.  Denied. Ex. 4. E. Lupacchino's Depo., p.65.

14.  Denied. Ex. 2, E. Lupacchino's CHRO Affidavit.

15.  Admitted.

16.  Admitted.

17.  Admitted.

18.  Denied. Ex. 4. E. Lupacchino's Depo., p.70.

19.  Admitted.

20.  Admitted, however, the sequence is unclear.

21.  Admitted.

22.  Denied. Ex. 2, E. Lupacchino's CHRO Affidavit.

23.  Denied. Ex. 2, E. Lupacchino's CHRO Affidavit.

24.  Admitted.

25.  Admitted

26.   Denied. Ex. 11, D.Dank's "investigation" notes.

27.   Denied. Ex.3, Depo. B. Gay, pp.45-49; Ex.4, Depo. E.Lupacchino, pp.104-105.

28.   Denied. Ex. 3, Depo. Gay p.57.

29.   Denied. Ex. 3, Depo. Gay p.57.

30.   Admitted.

31.   Admitted (as to when the meeting took place and parties in attendance).

32.   Denied. Ex. 4, Depo. E. Lupacchino, p.95.

33.   Denied. Ex. 4, Depo. E. Lupacchino, p.95.

34.   Admitted

35.   Denied. Ex. 2, E. Lupacchino's CHRO Aff.

36.   Denied. Ex. 3, Depo. B. Gay p.61.

37.   Denied. Ex. 5, Sales Reports listing plaintiff as reporting to B. Gay.

38.   Denied. Ex. 2, E. Lupacchino's CHRO Affidavit; Ex. 6. E-Mail to Kitzmiller from E. Lupacchino.

39.   Denied. Ex. 6, E-Mail to Kitzmiller from plaintiff.

40.   Denied. Ex. 7, D. Constant Affidavit.

41.   Denied. Ex. 3, Depo. B. Gay p.61.

42.   Admitted.

43.   Admitted.

44.   Admitted.

45.  Denied. Ex. 2, E. Lupacchino's CHRO Complaint.

46.  Admitted.

47.  Denied. Ex. 10, K. Flaherty Affidavit.

48.  Admitted.

49.  Admitted.

50.  Denied. Ex. 4, Depo. E. Lupacchino, pp.119-121.

51.  Admitted.

52.  Denied. Ex. 2, E. Lupacchino's CHRO Affidavit; Ex. 5, Sales Report listing Elizabeth Lupacchino on Bill Gay's Team.

53.  Denied. Ex. 4, Depo. E. Lupacchino, pp.130-131.

54.  Denied. Ex. 4, Depo. E. Lupacchino, pp.122-125.

55.  Denied. Ex. 11, D. Dank's "investigation" notes.

56.  Denied. Ex. 1, Lt. 2/22/02 terminating salary.

57.  Denied. Ex. 11, D. Dank's "investigation" notes.

58.  Denied. Plaintiff's Complaint, Second Count, Third Count, Fifth Count, Sixth Count.

59.  Denied. Ex. 4, Depo. E. Lupacchino, pp. 145-146.

60.  Denied. Ex. 4, Depo. E. Lupacchino, p.144.

61.  Denied. Ex. 1, Lt. 2/22/02 terminating salary; Ex. 15, CT. Dept. Labor Reg. §31-51qq-31.

62.  Denied. Id.

63.  Admitted. The note was dated 2/14/01 and was forwarded to ADP.

64.  Admitted.

65.  Admitted.

66.  Denied. Ex. 1, Lt. 2/22/02 terminating pay; Ex. 12, Lt. to ADP 3/8/02.

67.  Denied. Ex. 12, Lt. to ADP 3/8/02.

68.  Denied. Ex. 2, E. Lupacchino's CHRO Affidavit; Ex. 4, Depo. E. Lupacchino, p.35; Ex. 12, Lt. to ADP 3/8/02.

69.  Admitted.

70.  Denied. Ex. 2, E. Lupacchino's CHRO Aff.; Ex. 16, Depo., Dr. Conter, pp.55-58.

71.  Admitted. Exact cut-off date not known.

72.  Denied. Ex. 12, Lt. to ADP 3/8/02.

73.  Denied. Ex. 4, Depo. E. Lupacchino, p.35.

74.  Denied. Ex. 4, Depo E. Lupacchino, p.144.

75.  Denied. Ex. 12, Lt. to ADP 3/8/02; Ex. 3, Depo. B. Gay p.29; Ex. 4, Depo. E. Lupacchino, p.144.

76.  The statements in Paragraph 76 and all its subparts (comprising four pages) are arguments and not statements of purported facts.

II.    <u>Summary of Disputed Issues Of Material Fact to Be Tried</u>

    A.    **Was The Plaintiff Sexually Harassed By Her Supervisor, Bill Gay?**

    B.    **Was The Plaintiff Subjected To A Hostile Work Environment While She Was Employed By ADP?**

    C.    **Did ADP Properly Investigate The Plaintiff's Complaints And Take Appropriate Remedial Action?**

    D.    **Did Bill Gay And Other Employees of ADP Retaliate Against Elizabeth Lupacchino For Making Sexual Harassment Complaints Against Bill Gay And Was She Constructively Discharged From Her Employment?**

    E.    **Does Elizabeth Luapcchino's Other Employment Preclude Her Claim Of Damages?**

III.   <u>Facts Supporting A Jury Finding In Favor Of The Plaintiff On Each Disputed Issue Of Fact</u>

    A.    **Facts from which the jury may conclude that Elizabeth Lupacchino was sexually harassed by her Supervisor, Bill Gay.**

    1.    Elizabeth Lupacchino began working as a salesperson for ADP in Windsor, Connecticut in June 1999. From June 1999 until the fall of 2001 she had multiple male mangers and never had any problems with any of them. ADP hired Bill Gay to manage Elizabeth Lupacchino beginning in November 2001.

    2.    On November 26, 2001, Elizabeth Lupacchino was in the office in the morning. She was walking past Mr. Gay's office. Mr. Gay approached her from behind and grabbed her with his hand under her upper left arm, touching her breast

with his hand as he did so. Elizabeth Lupacchino was shocked and flustered by Mr. Gay's action. (Ex. 2, E.Lupacchino's CHRO Aff.).

3.     Elizabeth Lupacchino went to the on-site Human Resources office that afternoon (November 26th) to complain about Mr. Gay's behavior. She spoke to Kathy Alexander from the Human Resources department. (Ex. 2, E.Lupacchino's CHRO Aff.).

4.     The following day, November 27, 2001, there was a sales team meeting in the office at approximately 8:30 a.m. During the meeting Bill Gay repeatedly said the word "fuck" and "fucking." At one point during the meeting he stated that those words were part of his vocabulary and that's the way he is and he wasn't going to change. He asked if his use of those words bothered anyone and Elizabeth Lupacchino said it bothered her. For a brief time Bill Gay substituted the word "firetruck' but shortly reverted to saying "fuck" and "fucking" despite Elizabeth Lupacchino's statement that it bothered her. (Ex. 2, E.Lupacchino's CHRO Aff.).

5.     After the meeting Elizabeth Lupacchino once again went to speak to Kathy Alexander in Human Resources about Mr. Gay's inappropriate behavior. Elizabeth Lupacchino told her that she was afraid to travel to sales calls with Mr. Gay (as they were scheduled to do the next day) since she was very concerned that he would act inappropriately. (Ex. 2, E.Lupacchino's CHRO Aff.).

6.    When Elizabeth Lupacchino was leaving the office that day in the evening Bill Gay was returning to the office from a field call and Lupacchino and Bill Gay walked toward each other inside the office. Amy Leon was walking with Lupacchino. Bill Gay approached Lupacchino and grabbed the lapels of her leather coat with his hands and shook her. He said to Lupacchino, in an intimidating tone of voice, "what was your day like?!!" As Elizabeth Lupacchino attempted to knock his hands off her he blocked her right hand. Lupacchino's left hand was holding her briefcase. Bill Gay let her go and Lupacchino left the premises. (Ex. 2, E.Lupacchino's CHRO Aff.).

7.    Elizabeth Lupacchino returned to Human Resources again the next day, November 28th, to report Mr. Gay's latest grabbing to Kathy Alexander. Elizabeth Lupacchino reported to Alexander again that she was afraid to travel to sales calls with Mr. Gay. Kathy Alexander suggested that Elizabeth Lupacchino and Gay take separate cars and Gay and Elizabeth Lupacchino did each take their own cars into the field. As Elizabeth Lupacchino left Human Resources Bill Gay saw her. (Ex. 2, E.Lupacchino's CHRO Aff.).

8.    The next day, November 29th, Lupacchino went back to see Kathy Alexander in Human Resources. Alexander informed Lupacchino that Bill Gay's boss, Ken Kitzmiller, had called her and told her that Lupacchino was not in her

"division" and that she should leave his people alone. Elizabeth Lupacchino was told to make her complaints to Human Resources in Waltham, Massachusetts. (Ex. 2, E. Lupacchino's CHRO Aff.).

9.    Elizabeth Lupacchino thereafter made a complaint to Debbie Dank at Human Resources in Waltham, Massachusetts. Elizabeth Lupacchino was told she could "work it out with Bill" or "report to another manager" in the same area of the office. Lupacchino was made to feel like she was the problem and ADP did not intend to correct Bill Gay's behavior in any way. (Ex. 2, E.Lupacchino's CHRO Aff.).

10.    Bill Gay lifts weights regularly and has an extremely aggressive personality. His inability or unwillingness to respect physical and verbal boundaries made him frightening to Elizabeth Lupacchino and made other women on the sales team uncomfortable with him, at a minimum. (Ex. 2, E.Lupacchino's CHRO Aff.).

11.    Lupacchino was so concerned with Gay's behavior that she was afraid to travel in the same car with him to sales calls. She reported her concern to Human Resources (Kathy Alexander), which ADP has admitted. (Ex. 17, ADP's Response to CHRO).

12.    Elizabeth Lupacchino went to see her doctor and he advised her to stay out of work for at least one week since she was suffering from extreme stress and

anxiety and was unable to sleep. Elizabeth Lupacchino's doctor prescribed Xanax, which she began to take to calm her nerves. (Ex. 2, E. Lupacchino's CHRO Aff.).

13.   After a week out of work Elizabeth Lupacchino went back to work on Monday, December 10th. (Ex. 2, E.Lupacchino's CHRO Aff.).

14.   On Tuesday, December 11th, Elizabeth Lupacchino met with Debbie Dank and Ken Kitzmiller in the morning at the Windsor office. Ken Kitzmiller informed Elizabeth Lupacchino that Bill Gay was remorseful and that she would be reporting to Kitzmiller from then on. Kitzmiller worked out of a Stratford, Connecticut office of ADP. (Ex. 2, E.Lupacchino's CHRO Aff.).

15.   Elizabeth Lupacchino's work environment thereafter stayed the same; her cubicle was in close proximity to Bill Gay's office; the common areas of the office allowed Bill Gay to be near Elizabeth Lupacchino as she tried to do her job; Bill Gay still received and reviewed Elizabeth Lupacchino's sales numbers; the organization chart still showed Elizabeth Lupacchino to be on Bill Gay's team. Bill Gay said Lupacchino still reported to him but that he was not allowed to talk to her. Bill Gay still used the "F-word" around the office and acted inappropriately to the other women. (Ex. 2, E. Lupacchino's CHRO Aff.).

16.   Almost immediately after Lupacchino met with Kitzmiller, Bill Gay used the "F-word" while making a statement to a female member of Lupacchino's team.

Gay made the comment while standing behind Lupacchino. Lupacchino e-mailed Kitzmiller about what she had heard and notified him that she was disappointed and would not report Gay's inappropriate behavior each time it occurred. (Ex. 6). Kitzmiller did nothing.

17.   Lupacchino took Xanex from shortly after she complained about her supervisor's behavior until March 2002 (approximately three months). She visited her family physician on multiple occasions. Her family physician noted that on January 11, 2002 her "emotional distress is quite evident." He prescribed more Xanex and referred Lupacchino to a psychologist. Lupacchino visited her psychologist 7 times during January, February and March 2002. Her psychologist diagnosed her and treated her for Generalized Anxiety; Adjustment Disorder with Depressed Mood. (Ex. 22, Medical Report Excerpts).

18.   Bill Gay's supervisor, Ken Kitzmiller, also supervised Jill Kehl, who in turn supervised a sales team in the Windsor, Connecticut office just as Gay did. (Ex. 19, E. Lupacchino Aff.).

19.   Kitzmiller worked out of the Stratford, Connecticut office of ADP and, therefore, neither Gay nor Kehl had their boss on site in Windsor, Connecticut.

20. Shortly after Elizabeth Lupacchino complained to Human Resources about Bill Gay another sales team member (Dave Constant) complained to Human Resources about Jill Kehl's sexual harassment of him. (Ex. 7, Dave Constant Aff.).

21. The Human Resources employee (Debbie Dank) who "investigated" Elizabeth Lupacchino's complaint also "investigated" Dave Constant's complaint a few weeks later. (Ex. 7).

22. The investigator concluded that the incidents complained of had occurred. (Ex. 8, Depo. D.Dank, pp.86-87).

23. Dave Constant was immediately fired after complaining of sexual harassment, and he thereafter filed a CHRO Complaint against ADP. (Ex. 7).

24. Dave Constant was fired via letter from Human Resources employee Mac Carr; the same individual who terminated Elizabeth Lupacchino's salary three days after she faxed ADP her CHRO Complaint in February 2002. (Ex. 7, D. Constant Aff.; Ex. 1, Lt. 2/22/02).

25. ADP permitted Bill Gay to resign with a severance package on March 4, 2002. (Ex. 3, Depo. B. Gay, p.27).

26. No discipline of any kind was ever meted out to Ken Kitzmiller, the supervisor of both Bill Gay and Jill Kehl. (Ex. 9, Depo. M. Carr, p.128).

27.   The conduct Dave Constant complained of was done in plain view of the entire sales team, and took place several months before Bill Gay was hired. (Ex. 7).

28.   Despite the public harassment of Dave Constant, Bill Gay was provided no sexual harassment training by Ken Kitzmiller or anyone at ADP until after multiple complaints were made against Gay. (Ex. 3, Depo. B. Gay, pp.111-112).

29.   Bill Gay's entire working background was in the uniform rental business and he had very little experience supervising women. (Ex. 3, Depo. B. Gay, pp.5, 7-8, 10).

**B.   Facts From Which The Jury May Conclude That The Plaintiff Was Subjected To A Hostile Work Environment While She Was Employed By ADP:**

1.   In January 2002 Elizabeth Lupacchino observed Bill Gay approach a female co-worker, Kim Roscoe, from behind and make a motion as if to grab her. Roscoe happened to turn around just before contact with Gay. Gay said "it's a good thing that you have a cup of coffee in your hand because I was just getting ready to grab you." (Ex. 4, Depo. E.Luppachino, pp.46-48). Roscoe commented to the effect that it was a good thing he didn't touch her. Id.

2.   Also in January 2002 Elizabeth Lupacchino observed Bill Gay grab a female co-worker, Maggie Tibideau, put her in a bear hug and spin her around off

her feet. Bill Gay then asked Tibideau how much she weighed. (Ex. 4, Depo. E. Lupacchino, p.48).

3.    In February 2002 Elizabeth Lupacchino learned from Kristen Flaherty that the third female member of her team, Jaime Hasson, had been touched by their supervisor, Bill Gay. Hasson was in Gay's office "and she was getting ready to leave his office, and before she could leave he had grabbed her from behind, sat her on his lap to pull down the top of her skirt to look at a tattoo that she had." (Ex. 4, Depo. E.Lupacchino, p.50).

4.    Elizabeth Lupacchino also learned in February 2002 from Kristen Flaherty that Bill Gay was making sexual advances toward Flaherty. (Ex. 4, Depo. E.Lupacchino, pp.53-54).

5.    Beginning immediately after his hiring, Bill Gay began to make sexual comments about the type of women and body types he liked. (Ex. 10, K.Flaherty Aff.).

6.    In the presence of a manager, Jill Kehl, Bill Gay intimated that John Hassett had a sexual relationship with Kristen Flaherty. (Ex. 10, K.Flaherty Aff.).

7.    After Elizabeth Lupacchino's complaints, Kristen Flaherty was in the office working when a former employee, Amy Leons, was discussed by employees. In the presence of a corporate trainer and manager employed by ADP Bill Gay

commented about how "thick and juicy Amy Leons' thighs and ass were," clinching his fist and grunting expressing that "he likes a thick woman with big legs!" (Ex. 10, K.Flaherty Aff.).

8.    After Elizabeth Lupacchino's complaints, ADP held a holiday party. Managers were present, including Kenny Kitzmiller and Jill Kehl. In the presence of management, Bill Gay began to massage the shoulders and back of an ADP employee, Diane Grzelak. Management did not say or do anything. (Ex. 10, K.Flaherty Aff.).

9.    In January 2002, Kristin Flaherty was driving with Bill Gay on a trip to visit clients. Gay asked her "do you think I am good-looking?" and asked her "have you ever dated anyone from ADP?" and "would you ever date anyone from ADP?" (Ex. 10, K.Flaherty Aff.).

10.    Bill Gay told Kristin Flaherty that "when my son was born the doctors couldn't believe how big his you know what was, I mean they just couldn't believe it, my wife and the doctors were like, Oh my god, they were impressed by it." (Ex. 10, K.Flaherty Aff.).

11.    On numerous other occasions from November 2001 to January 2002, Kristin Flaherty traveled with Bill Gay. Gay would repeatedly tell her that he was "so incredibly attracted to Jill's face," that "she had such a pretty face," and wanted to

know if she thought Jill was pretty. He also regularly told her that "Jaimie has a very nice body, and how good she looks, don't you think." (Ex. 10, K.Flaherty Aff.).

12.    Throughout the course of Kristin Flaherty's employment, she believed that Gay repeatedly stared at the breasts and buttocks of female workers, including her, and commented on the outfits worn be females. In addition, Gay repeatedly called Flaherty and other females into his office for no reason other than to stare at them again. (Ex. 10, K.Flaherty Aff.).

13.    On February 4, 2002, Kristin Flaherty attended a training meeting held by Scott Martin, a Sales Executive employed by ADP. Mr. Martin was Gay's direct boss. Gay as well as John Latini, Ray Collins, Jaimie Hasson, Kim Roscoe, and David Feign were in attendance. When a Power Point presentation didn't work, Gay commented "that's funny it was working when the porn was on." In addition, during the course of the meeting, Gay repeatedly touched Jaime Hasson. Gay's behavior and comments were witnessed by management but no action was taken. (Ex. 10, K.Flaherty Aff.).

**B-1. Facts from which the jury may conclude that ADP's <u>own</u> <u>actions</u> prove that Elizabeth Lupacchino was sexually harassed by her Supervisor, Bill Gay.**

1.     ADP claims it terminated Bill Gay's employment in part because of Elizabeth Lupacchino's complaint of sexual harassment. (Ex. 8, Depo. D.Dank, p.49).

2.     The investigation(s) <u>by</u> <u>ADP</u> of the plaintiff's complaints to Human Resources substantiated that B. Gay had acted inappropriately toward Elizabeth Lupacchino. (Ex. 9, Depo. M. Carr, pp.44-45, 49, 52).

3.     Kristen Flaherty, one of the five other salespeople on B. Gay's team also complained to ADP about being sexually harassed by Bill Gay. (Ex. 10).

4.     ADP's investigation of Flaherty's complaint (made approximately two months after Elizabeth Lupacchino's) concluded that Gay had also acted inappropriately toward Flaherty. (Ex. 13, ADP's CHRO response).

5.     ADP's investigation of Flaherty's complaint led ADP to believe that Gay had also acted inappropriately to the third female member of the sales team, Jaime Hasson. (Ex. 9, Depo. M. Carr pp.16-18; Ex. 13, ADP's CHRO response).

6.     Bill Gay worked for ADP from November 2001 through March 4, 2002. He supervised a sales team of five people; two men and three women. (Ex. 9, Depo. M. Carr, p.108; Ex. 5, Team List).

7.    None of the men supervised by Gay complained to Human Resources about his conduct toward them in the workplace. (Ex. 9, Depo. M. Carr, p.104).

8.    ADP's investigations of Lupacchino's complaint and Flaherty's complaint led ADP to conclude that Bill Gay had acted inappropriately toward all three women on Gay's sales team. (Ex. 8, Depo. D.Dank, pp.56-57; Ex. 9, Depo. M. Carr, pp.103-104; Ex. 13, ADP's CHRO response).

9.    Gay received no sexual harassment training at ADP until <u>after</u> multiple complaints were made by women about his conduct. (Ex. 3, Depo. B. Gay, pp.111-112).

**C.    Facts From Which The Jury May Conclude That ADP Did Not Properly Investigate And Take Appropriate Remedial Action:**

1.    The investigator had never done a sexual harassment investigation before. (Ex. 8, Depo. D.Dank, p.81).

2.    The investigator never interviewed anyone other than the plaintiff. (Ex. 8, Depo. D.Dank, pp.6-7).

3.    EEOC guidelines state that "the investigator should interview the complainant, the alleged harasser, and third parties who could reasonably be expected to have relevant information." (Ex. 18, p.12).

4.    A more experienced Human Resources employee (Kathy Alexander) was told by Bill Gay's manager (Kitzmiller) to "leave his people alone" and the complaint

investigation was thereafter handled by the investigator who had never before conducted an investigation. (Ex. 2, E. Lupacchino's CHRO Aff.).

5.    No one from ADP ever asked Bill Gay if he touched Elizabeth Lupacchino's breast. (Ex. 3, Depo. B. Gay, p.54).

6.    No one from ADP ever told Bill Gay that he was not allowed to retaliate against the plaintiff for making a complaint. (Ex. 3, Depo. B. Gay, p.57).

7.    EEOC Guidelines state that "when management investigates a complaint of harassment, the official who interviews the parties and witnesses should remind these individuals about the prohibition against retaliation." (Ex. 18, p.11).

8.    Bill Gay received no sexual harassment training until _after_ multiple complaints were made about his behavior. (Ex. 3, Depo. B. Gay, pp.111-112).

9.    ADP violated its own policy regarding a sexual harassment investigation by failing to tell Bill Gay to maintain confidentiality; by failing to tell Bill Gay that Elizabeth Lupacchino was entitled to respect and consideration; and by failing to tell Bill Gay that ADP forbids "retaliation or reprisal against anyone who has made a complaint of harassment." (Ex. 20, ADP's Purported Harassment Policy, p.4).

10.   ADP backfilled its investigator's notes in February 2002 to make it appear that discipline had been meted out to Bill Gay in December 2001 (Ex. 8, Depo. D.Dank pp.36-37; Ex. 11).

11.   Bill Gay was unaware of ever being disciplined in any fashion as a result of Elizabeth Lupacchino's complaints. (Ex. 3, Depo. B. Gay, p.61, 65-66).

12.   Any training or "generic" warnings to the employees at ADP were the result of a CHRO Complaint it received from another employee (Dave Constant) in December 2001 and not as a result of Elizabeth Lupacchino's complaints. (Ex. 7).

13.   The sales figure reports continued to list Elizabeth Lupacchino as on Bill Gay's sales "team" long after her purported switch to a different manager. (Ex. 5).

14.   Bill Gay continued to ask Elizabeth Lupacchino for her sales figures despite ADP's claim that she no longer reported to Gay. (Ex. 4, Depo. E.Lupacchino, p.110).

15.   The plaintiff's close proximity to Bill Gay in the layout of the office did not change, despite her desire to relocate. (Ex. 4, Depo. E.Lupacchino, p.112).

16.   ADP admitted in the CHRO proceedings that Lupacchino's work station was not moved and that Gay continued to receive Lupacchino's sales numbers after her complaint. (Ex. 22, ADP's CHRO Response, Lupacchino).

17.   A subsequent complaint by Lupacchino to her "new" supervisor about Gay's continued use of foul language was disregarded by her "new" manager (Kitzmiller), who was also Gay's boss. (Ex. 6).

18.   Bill Gay was never told that a sexual harassment complaint was made against him by Elizabeth Lupacchino. (Ex. 3, Depo. B. Gay, pp.64-65).

19.   Bill Gay continued to sexually harass employees of ADP after the alleged remedial action claimed by ADP was taken in December 2001. (Ex. 10, K.Flaherty Afff.).

20.   The ADP investigator now claims that her investigation was not done pursuant to ADP's sexual harassment investigation policy. (Ex. 8, Depo. D.Dank, p.56). ADP previously represented to CHRO that Elizabeth Lupacchino's complaint had been a sexual harassment complaint. (Ex. 17).

21.   ADP asserts that any discipline meted out to Bill Gay was <u>not</u> meted out under ADP's sexual harassment policy. (Ex. 8, Depo. D.Dank, pp.56, 58).

22.   The verbal warning to Bill Gay (if one was given) was the least significant discipline that could be given to an employee. (Ex. 8, Depo. D.Dank, p.59).

23.   The investigator determined that Bill Gay <u>had not</u> engaged in sexually harassing behavior. (Ex. 8, Depo. D.Dank, p.65).

24.   ADP's investigator concluded that there had been a "hostile encounter" between Bill Gay and Elizabeth Lupacchino and the investigator believed Gay had grabbed Elizabeth Lupacchino and used foul language. (Ex. 8, Depo. D.Dank, pp.67-68).

25.    Elizabeth Lupacchino was <u>never</u> told whether Bill Gay was disciplined in any way. (Ex. 8, Depo. D.Dank, p.74; Ex. 2, E. Lupacchino's CHRO Aff.).

26.    EEOC guidelines state that following an investigation "The parties should be informed of the determination." (Ex. 18, p.13).

27.    Elizabeth Lupacchino's "new" manager, Ken Kitzmiller, never forwarded Elizabeth Lupacchino's follow-up complaint about Bill Gay to Human Resources. (Ex. 8, Depo. D.Dank, pp.75-76; Ex. 6).

28.    Kitzmiller yelled at Elizabeth Lupacchino to stop playing mind games when he met with her to discuss the Human Resources investigation. (Ex. 4, Depo. E. Lupacchino, p.94).

29.    Elizabeth Lupacchino's request for a copy of the investigator's notes was ignored. (Ex. 8, Depo. D.Dank, pp.78-79).

**D.    Facts From Which The Jury May Conclude That Bill Gay And Other Employees Of ADP Retaliated Against Elizabeth Lupacchino For Making Sexual Harassment Complaints Against Bill Gay And That She Was Constructively Discharged From Her Employment:**

1.    On November 26th and 27th 2001 Elizabeth Lupacchino complained to Human Resources that Bill Gay grabbed her upper arm and touched her breast (Nov. 26th) and that Bill Gay repeatedly used the "F-word" in a sales team meeting (Nov. 27th) <u>after</u> she asked him to stop. (Ex. 2).

2.    Later in the day on November 27th Bill Gay retaliated against Elizabeth Lupacchino by resolving a commission dispute in a way unfavorable to Elizabeth Lupacchino and in favor of a female sales associate (Kristen Flaherty) who was at that time a "team player." (Ex. 11, D. Dank's "investigation" notes; Ex. 2).

3.    Kristen Flaherty was told by Bill Gay that Elizabeth Lupacchino had reported him to Human Resources. Gay told Flaherty that Elizabeth Lupacchino had complained about him to cover up the fact that she wasn't doing her job, and that she shouldn't believe Lupacchino's story. (Ex. 10, Flaherty Aff., Para 6(e)).

4.    Flaherty was also told by Gay that if members of the sales team had a problem with him they were not to go to his superiors. Id.

5.    Gay's statements to Flaherty violated the confidentiality provisions of ADP's purported harassment policy and violated the reporting requirements of the purported policy by telling his subordinate that complaints had to be made to him. (Ex. 20, ADP's Purported Harassment Policy, p.4).

6.    Flaherty has stated that she saw "Lupacchino being mistreated after she had complained about… Gay." (Ex. 10, Para. 6.(t)).

7.    On the same day that Elizabeth Lupacchino complained to Human Resources about Bill Gay's use of the "F-word" Gay approached Lupacchino at the end of the day and grabbed the lapels of her coat with his hands and shook her. He

said to Lupacchino in an intimidating tone of voice "what was your day like?!!" Lupacchino had to attempt to knock Gay's hands off her, which she did. She then left the premises. (Ex. 2, E.Lupacchino Aff.).

8.   The end of the year is an extremely important time in the payroll services business since many companies which are inclined to change payroll service providers choose to make the change effective early in the following year. (Ex. 19, E.Lupacchino's Aff.).

9.   Following Elizabeth Lupacchino's complaints to Human Resources in late November 2001 she received none of the customary sales support provided to employees in her position. (Ex. 19, E.Lupacchino's Aff.).

10.   Her requests for the usual support from her managers and sales team members went unheeded. (Ex. 19, E.Lupacchino's Aff.).

11.   Since such requests had customarily been honored it can reasonably be inferred that similar requests made after her complaints about her supervisor were ignored as a result of her complaints. (Ex. 19, E.Lupacchino's Aff.).

12.   Rose Kitzmiller is Ken Kitzmiller's wife and worked for ADP in support of sales of certain products to CPA firms. (Ex. 4, Depo. E.Lupacchino, pp.115-116).

13.   After making her complaints about Bill Gay (and being told Ken Kitzmiller would be her new manager), Rose Kitzmiller was never available to help Elizabeth

Lupacchino on her sales calls, even though Rose Kitzmiller continued to go on sales calls with other sales people. (Ex. 4, Depo. E.Lupacchino, p.116).

14.   Elizabeth Lupacchino had five sales calls in December and January to CPA firms for which she needed Rose Kitzmiller's help. Elizabeth Lupacchino had to cancel all five because Rose Kitzmiller made herself "unavailable." Id.

15.   After Elizabeth Lupacchino complained about Bill Gay's sexual harassment, Bill Gay sent another salesperson into her "exclusive" territory to sell an ADP promotional product that only Elizabeth Lupacchino should have been allowed to sell in that territory. (Ex. 4, Depo. E.Lupacchino, pp.124, 125).

16.   After Elizabeth Lupacchino complained about Bill Gay's sexual harassment of her she was never included in any sales team meetings, one purpose of which is to inform the salespeople of product promotions which boost their chances for sales. (Ex. 4, Depo. E.Lupacchino, pp.130-132).

17.   As a result of not being included in any sales team meetings Elizabeth Lupacchino only found out after-the-fact that a promotional price reduction could have been offered to her customers, and that a new product (year-end W-2's) was available. (Ex. 4, Depo. E.Lupacchino, p.131).

18.   When the investigation of Lupacchino's complaint began in December 2001 her sales were at 70% of her sales quota. (Ex. 11). By the end of January she

had fallen to 32% of quota. The next lowest member of her team was still at 72% of his quota. (Ex. 5).

19.    On February 19, 2002 Elizabeth Lupacchino faxed a CHRO Complaint to ADP's headquarters and mailed the Complaint to CHRO. (Ex. 14).

20.    Unbeknownst to Elizabeth Lupacchino ADP was at that time investigating a complaint made by Kristen Flaherty against Bill Gay for sexual harassment. (Ex. 9, Depo. M.Carr, pp.92-93).

21.    Mac Carr, from ADP's Human Resources Department had concluded in his investigation of Flaherty's complaint that Bill Gay had acted inappropriately toward Flaherty and toward another female member of the sales team, Jaime Hasson. (Ex. 13, ADP Response to CHRO).

22.    ADP did not tell Elizabeth Lupacchino after she filed her CHRO Complaint that it had determined that Bill Gay was a problem it would solve. (Ex. 1; Ex. 9, Depo. M.Carr, p.118).

23.    ADP's immediate response Elizabeth Lupacchino's CHRO Complaint was to send a letter to her by Federal Express letter telling her that her salary would be "discontinued effective close of business today." (Ex. 1).

24.   ADP also told Elizabeth Lupacchino in response to her CHRO Complaint that her "failure to submit leave of absence forms will be considered a voluntary resignation." (Ex. 1).

25.   In addition, ADP's letter to Elizabeth Lupacchino illegally included a blanket medical authorization, which ADP represented she would have to sign to remain employed at ADP. (Ex. 1; Ex. 15, Dept. Labor Reg. §31-51qq-31).[3]

26.   The letter to Elizabeth Lupacchino was sent directly to Elizabeth Lupacchino even though ADP knew that at the time she was represented by counsel. (Ex. 14).

27.   Elizabeth Lupacchino never requested a leave of absence from ADP and, hence never took a leave of absence from ADP. (Ex. 4, Depo. E. Lupacchino, p.144; Ex. 19, E.Lupacchino's Aff.).

28.   When Elizabeth Lupacchino missed work due to Bill Gay's behavior she used sick days. (Ex. 4, Depo. E. Lupacchino, p.144; Ex. 19, E.Lupacchino's Aff.).

29.   FMLA leave is limited in duration and if Elizabeth Lupacchino had been forced by ADP to utilize FMLA leave as a result of Bill Gay's actions she would have irrevocably exhausted part of her annual FMLA entitlement. (Ex. 21, ADP's FMLA Policy, p.2).

---

[3] The employer is permitted to request that an employee obtain a medical certification from their doctor, however, "no additional information may be required. In all instances the information on the form must relate only to the serious health condition for which the current need for leave exists." (Ex. 15).

**D-1. Facts From Which The Jury Can Conclude That ADP Engaged In A Pattern Of Retaliatory Conduct:**

1.    Dave Constant, a sales associate similarly situated to Elizabeth Lupacchino, complained to ADP's Human Resources Department on December 19, 2001 that Jill Kehl, his supervisor, was sexually harassing him. (Ex. 7). Mr. Constant's complaint to Human Resources was made approximately three weeks after Lupacchino's.

2.    One week later Kehl and Mac Carr (the Human Resources Director) asked Constant if he wanted to resign or be terminated. Constant responded that he wanted to speak to an attorney. Mac Carr sent Constant a letter terminating Constant's employment. (Ex. 7).

3.    ADP's investigator of Constant's charge determined that Constant had been sexually harassed. (Ex. 8, Depo. D.Dank, pp.86-87).

4.    Less than two months later Elizabeth Lupacchino faxed her CHRO Complaint to ADP.

5.    Within three days of learning that Elizabeth Lupacchino filed a complaint and had an attorney, Mac Carr sent her a letter (rather than her attorney) terminating her salary. (Ex. 1).

6.    Within a two month period two salespeople made complaints about sexual harassment. The harassers were both supervised by Ken Kitzmiller. In each

instance ADP believed that the alleged harasser had acted inappropriately. The complainants, Dave Constant and Elizabeth Lupacchino, were terminated (Constant) and had their salary cut off (Lupacchino), respectively.

**E.    Facts From Which The Jury Can Conclude That Elizabeth Lupacchino's Other Employment Does Not Preclude Her Claim Of Damages:**

1.    While employed by ADP in 2001 Elizabeth Lupacchino began working part-time in the evenings as a party planner/event organizer for a large health club. (Ex. 19, E.Lupacchino's Aff.).

2.    Parties were customarily held in the evenings and on weekends. (Ex. 19, E.Lupacchino's Aff.).

3.    When Elizabeth Lupacchino's working conditions and earnings deteriorated at ADP Elizabeth Lupacchino began to work more hours at the health club. (Ex. 4, Depo. E.Lupacchino, pp.40-41).

4.    Elizabeth Lupacchino described her medical condition as "particularized" to ADP. (Ex. 4, Depo. E.Lupacchino, p.25).

5.    Elizabeth Lupacchino felt safe and comfortable in the working environment at the health club. (Ex. 4, Depo. E.Lupacchino, p.29).

6.    If parties were booked she would work approximately 15-30 hours per week on nights and weekends. Some parties lasted all night. (Ex. 19, E.Lupacchino's Aff.).

7.   The hours Elizabeth Lupacchino worked at the health club did not ordinarily overlap with her customary hours of work at ADP. (Ex. 19, E.Lupacchino's Aff.).

8.   ADP had no prohibition on "moonlighting," as far as Elizabeth Lupacchino knew. (Ex. 19, E.Lupacchino's Aff.).

9.   After her discharge from ADP, Elizabeth Lupacchino continued to increase her hours at the health club and eventually added weekday daytime hours to her job at the health club. (Ex. 19, E.Lupacchino's Aff.).

10.  Elizabeth Lupacchino lost at least $35,000 by working at the health club instead of ADP. ($20,000 lost in 2002 and $15,000 lost in 2003). (Ex. 19, E.Lupacchino's Aff.).

11.  She has steadily obtained promotions at the health club since 2002 and has now brought her income back to the approximate level it was while she was employed at ADP. (Ex. 19, E.Lupacchino's Aff.).

12.  Elizabeth Lupacchino may have been correctly classified as eligible for the benefits of full-time employment at the health club at an earlier date than March 2002 as a result of the hours she worked, but she believed her primary occupation to be payroll sales for ADP until at least late February. (Ex. 19, E.Lupacchino's Aff.).

13.   It is inaccurate to characterize Elizabeth Lupacchino's job at the health club to be "full-time" until March 2002, at least to the extent that the phrase "full-time" is meant to convey a description of a person's primary occupation. (Ex. 19, E.Lupacchino's Aff.).

PLAINTIFF,

By_____
James H. Howard, For
Phelon, FitzGerald & Wood, P.C.
773 Main Street
Manchester, CT  06040
(860) 643-1136
Facsimile (860) 643-5773
Federal Bar No. ct07418

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Local Rule 56(a) 2 Statement

was mailed this 25th day of June, 2004 to counsel for the defendant as follows:

Mary A. Gambardella, Esquire
Epstein, Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT  06901-2681

_____
James H. Howard, For
Phelon, FitzGerald & Wood, P.C.
773 Main Street
Manchester, CT  06040
(860) 643-1136
Facsimile (860) 643-5773
Federal Bar No. ct07418