UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH LUPACCHINO, | : | |
| | : | |
| Plaintiff, | : | NO. 3:02CV2281 (MRK) |
| | : | |
| v. | : | |
| | : | |
| ADP, INC. a/k/a AUTOMATIC DATA PROCESSING, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

In this case, Plaintiff Elizabeth Lupacchino sues her former employer, Automatic Data Processing Inc. ("ADP"), for multiple forms of alleged sex-based workplace discrimination including hostile work environment, retaliation and constructive discharge. Currently pending before the Court is ADP's Motion for Summary Judgment [**doc. #28**]. For the reasons explained below, Defendant's motion is GRANTED in part and DENIED in part.

**I.**

The following facts are undisputed unless otherwise noted.[1] Ms. Lupacchino was employed as a District Manager at ADP in its Windsor, Connecticut facility from June 1999 until February 22, 2002, when she claims she was constructively discharged. Def.'s 56(a)(1) Stmt. ¶ 1;

---

[1] The facts are drawn from the following pleadings and exhibits attached thereto: Defendant's Memorandum of Law in Support of Motion for Summary Judgment [doc. #29] ("Def.'s Mem. in Supp. Summ. J."); Defendant's Statement of Undisputed Facts Pursuant to Federal Rule 56(a)(1) [doc. #30] ("Def.'s 56(a)(1) Stmt."); Plaintiff's Memorandum in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment [doc. #34] ("Pl.'s Mem. in Opp. Summ. J."); Plaintiff's Local Rule 56(a)(2) Statement [doc. #35] ("Pl.'s 56(a)(2) Stmt."); and Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment [doc. #39] ("Def.'s Reply").

-1-

Pl.'s 56(a)(2) Stmt. ¶ 1.  William Gay was hired by ADP as a District Sales Manager to oversee the Windsor, Connecticut office in or about November 2001 and Ms. Lupacchino began reporting to Mr. Gay upon his hire.  Def.'s 56(a)(1) Stmt. ¶¶ 5, 7; Pl.'s 56(a)(2) Stmt. ¶¶ 5, 7.  Soon after she began reporting to Mr. Gay, on or about November 26, Ms. Lupacchino lodged the first of her many complaints against Mr. Gay with ADP's Human Resources Department ("HR").  *See* Def.'s 56(a)(1) Stmt. ¶¶ 9, 19; Pl.'s 56(a)(2) Stmt. ¶¶ 9, 19.

Ms. Lupacchino complained that Mr. Gay engaged in a variety of conduct that, she claimed, made her uncomfortable, including brushing his hand against her breast, making sexual remarks and constantly using profanity in the office.  *See* Def.'s 56(a)(1) Stmt. ¶¶ 8, 12, 17, 42-44; Pl.'s 56(a)(2) Stmt. ¶¶ 8, 12, 17, 42-44.  *See also* Dank Notes of 12/3/01, Ex. 11 [doc. #34-1] (noting the substance of Ms. Lupacchino's complaints).  Kathy Alexander in ADP's HR department relayed Ms. Lupacchino's complaints to Debbie Dank, the company's Area Human Resources Director, see Def.'s 56(a)(1) Stmt. ¶ 10; Pl.'s 56(a)(2) Stmt. ¶ 10, who in turn brought the complaints to the attention of Ken Kitzmiller, Mr. Gay's supervisor.  *See* Def.'s 56(a)(1) Stmt. ¶ 26; Pl.'s 56(a)(2) Stmt. ¶ 26.  ADP investigated Ms. Lupacchino's complaints, and the company asserts that it took certain corrective actions in response to Ms. Lupacchino's complaints, including verbally counseling Mr. Gay about using profanity and touching other employees and changing Ms. Lupacchino's reporting relationships.  However, Ms. Lupacchino disputes the company's claim that it took corrective measures.  *See* Def.'s 56(a)(1) Stmt. ¶¶ 27-29, 34, 37, 52; Pl.'s 56(a)(2) Stmt. ¶¶ 27-29, 34, 37, 52.  In addition, Ms. Lupacchino claims that after she complained about Mr. Gay, ADP retaliated against her for her complaints by, among other things, denying her sales support on five separate occasions and excluding her from important

sales team meetings. Def.'s 56(a)(1) Stmt. ¶¶ 48-49; Pl.'s Mem. in Opp. Summ. J. [doc. #34] at 20-21.

On or about February 13, 2002, Ms. Lupacchino reported to work at ADP for the last time. The next day, she left a voicemail message for her manager informing him that she was unable to come to work and that she would send the company a doctor's note. *See* Def.'s 56(a)(1) Stmt. ¶ 63; Pl.'s 56(a)(2) Stmt. ¶ 63. Shortly thereafter, on February 19, Ms. Lupacchino, through her attorney, filed a complaint against ADP with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *See* Letter 3/8/02, Ex. 12 [doc. 34-1]. On February 22, not having received a doctor's note from Ms. Lupacchino, Mac Carr, the director of HR at ADP, sent her a letter stating that "[her] compensation [would] be temporarily discontinued effective close of business today" and advising her that she was "required to submit a physician's note indicating [her] inability to work because of a medical condition from February 15." Letter of 2/22/02, Ex. 1 [doc. #34-1]. The letter also asked Ms. Lupacchino to fill out enclosed leave of absence forms. *See id.* On February 28, ADP received a doctor's note on Ms. Lupacchino's behalf stating that she could not work due to an unspecified "medical condition." Def.'s 56(a)(1) Stmt. ¶ 63; Pl.'s 56(a)(2) Stmt. ¶ 63. As a result, Ms. Lupacchino's compensation was not interrupted and even though she never returned to work, ADP continued to pay Ms. Lupacchino her full salary and benefits until March 29, 2002. *See* Def.'s 56(a)(1) Stmt. ¶ 71; Pl.'s 56(a)(2) Stmt. ¶ 71. During the same time period that she was on paid leave from ADP, Ms. Lupacchino began working nearly forty-hours a week at a health club called Healthworks. *See* Healthworks Membership Change Form, Ex. P [doc. #33].

Ms. Lupacchino's attorney wrote to ADP on March 8, 2002, informing the company that

Ms. Lupacchino considered herself "constructively discharged from ADP" as of February 22, 2002 when she received Mr. Carr's letter. *See* Letter 3/8/02, Ex. 12 [doc. #34-1]. On April 3, 2002, Mr. Carr sent Ms. Lupacchino a letter informing her that she was deemed to have resigned on March 29, the last day on which ADP paid her salary. Def.'s 56(a)(1) Stmt. ¶ 72; Pl.'s 56(a)(2) Stmt. ¶ 72. This lawsuit followed.

## II.

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & H. R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir. 1990). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d

Cir. 1996).

### III.

There are material factual disputes that preclude the Court from granting summary judgment to ADP on Ms. Lupacchino's retaliation and hostile work environment claims. By contrast, there are no material issues of fact on Ms. Lupacchino's constructive discharge claim, and under governing Second Circuit precedent, ADP is entitled to judgment on that claim as a matter of law.

**Retaliation**.   In order to establish a *prima facie* case of retaliation under Title VII, Ms. Lupacchino must show that: "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of [her] participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between [her] protected activity and the adverse action taken by the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (citations and quotations omitted). If Ms. Lupacchino carries her *prima facie* burden, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quotations and citations omitted). Once the employer does so, the burden shifts back again to the employee to offer evidence showing that "the legitimate reasons offered by [ADP] were not its true reasons, but were a pretext for discrimination." *Id*.

There can be no serious dispute that Ms. Lupacchino engaged in protected activity that was known to ADP when she complained verbally to the HR department in November 2001 and later filed a CHRO complaint in February 2002. *See* Dank Notes of 12/03/02, Ex. 11 [doc. #34-1] (noting that Ms. Lupacchino complained that Mr. Gay was "a very touchy person," that he

"purposely brushed her chest" and that she told Mr. Gay that "she didn't like his language or him touching her"). However, there are factual disputes on whether ADP took an adverse employment action against Ms. Lupacchino and whether such action, if any, was casually related to Ms. Lupacchino's protected activity.

Ms. Lupacchino claims that ADP took a host of retaliatory actions against her that affected her performance at work, and as a result, her compensation. *See* Pl.'s Mem. in Opp. Summ. J. at 19-22. While it is a close question, the evidence in this case suggests, and a reasonable jury could find, that certain actions alleged by Ms. Lupacchino may constitute adverse employment actions. For example, Ms. Lupacchino claims that after her first complaint about Mr. Gay on November 26, 2001, Rose Kitzmiller, an employee of ADP and the wife of supervisor Ken Kitzmiller, denied her sales support that was customarily offered to other employees on five separate occasions. Def.'s 56(a)(1) ¶ 49; Pl.'s 56(a)(2) ¶ 49. According to Ms. Lupacchino, this action among others, hurt her sales numbers which in turn endangered her commissions. ADP documents show that Ms. Lupacchino's sales numbers dropped from 70% of her quota in early December to 32% in January, after she had lodged her complaints against Mr. Gay. *See* Dank Notes of 12/3/01, Ex. 11 [doc. # 34-1]; Sales Chart, Ex 5 [doc. #34-1]. Reduction in pay is a classic adverse employment action. *See Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002).

The evidence supporting the causal prong of Ms. Lupacchino's *prima facie* case is thin, but there is a temporal proximity between the time of Ms. Lupacchino's complaints in November and December of 2001 and the actions that ADP took that she claims diminished her sales effectiveness and commissions. A "causal connection can be established indirectly by showing

that the protected activity was closely followed in time by the adverse action." *See Jute v. Hamilton Sunstrand Corp.*, 321 F. Supp. 2d 408, 418 (D. Conn. 2004) (citing *Manoharan v. Columbia Univ. Co. of Phys. & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). Although ADP's attorney argued at oral argument that Ms. Kitzmiller was legitimately too busy to provide Ms. Lupacchino with the sales support she requested, a jury would not be required to accept that explanation. Assessing the "credibility of the evidence . . . is a task for the jury." *Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 510 (2d Cir. 2004).

In sum, triable factual issues prevent this Court from resolving these issues at the summary judgment stage. *See, e.g., Terry v. Ashcroft*, 336 F.3d 128, 146 (2d Cir. 2003) (summary judgment improper where genuine issue of material fact existed as to whether plaintiff established causal connection); *Howard v. Sprint/United Mgmt. Co.*, 299 F. Supp. 2d 180, 188 (S.D.N.Y. 2003) ("[I]ssues of fact including, . . . the causal connection between plaintiff's reporting and incidents of alleged retaliation . . . preclude summary judgment in this case."); *Edwards v. Community Enters., Inc.*, 251 F. Supp. 2d 1089, 1104 (D. Conn. 2003) (denying summary judgment where material issue of fact existed as to causal prong of retaliation claim). Therefore, the Court denies summary judgment on Ms. Lupacchino's retaliation claim in Count Two of the Complaint.

**Hostile Work Environment**. Disputed issues of material fact similarly preclude summary judgment on Ms. Lupacchino's hostile work environment claim. In order to prevail on her allegations that she was subjected to a hostile work environment on the basis of her sex, Ms. Lupacchino must demonstrate "conduct (1) that is 'objectively' severe or pervasive – that is [conduct that] creates an environment that a reasonable person would find hostile or abusive [the

'objective' requirement], (2) that the plaintiff 'subjectively' perceive[s] as hostile or abusive [the 'subjective' requirement], and (3) that creates such an environment because of plaintiff's sex . . . [the 'prohibited causal factor' requirement]." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). In determining whether a hostile environment exists, a court must look at the "totality of the circumstances." *Richardson v. New York Dep't of Correctional Serv.*, 180 F.3d 426, 437-38 (2d Cir. 1999). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. " *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotations and citations removed). However, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Whidbee v. Garzarelli Food Specialities Inc.*, 223 F.3d 62, 70 (2d Cir. 2000).

      There are factual disputes regarding whether Mr. Gay's conduct towards Ms. Lupacchino was sufficiently severe and pervasive to be actionable. Ms. Lupacchino claims that during the approximately eighteen-week period during which she worked with Mr. Gay, he engaged in a variety of harassing conduct including but not limited to: (1) engaging in unwanted physical contact on at least two occasions; (2) constantly using profanity; (3) engaging in inappropriate physical contact with other female co-workers on at least two occasions; and (4) making at least three explicit comments about female bodies. Def.'s 56(a)(1) Stmt. ¶ 8, 12, 17, 42-44; Pl.'s Mem. in Opp. Summ. J. at 5-7. Taking Ms. Lupacchino's allegations as true, as the Court must at this stage, a reasonable jury would be entitled to conclude that Mr. Gay's conduct created a sexually hostile work environment. *See, e.g.*, *Valentin v. New York City*, No. 94 Civ. 3911, 1997 U.S. Dist. LEXIS 24059 (E.D.N.Y. Sept. 9, 1997) ("Verbal conduct, such as sexual slurs, persistent

comments about a woman's body, the telling of sexually related jokes or boasting about sexual conquests, has been held legally sufficient to sustain a claim of hostile work environment.")

There are also factual disputes concerning ADP's ability to prevail on what is known as the *Faragher/Ellerth* defense. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Where harassment is, as here, attributable to a supervisor and where the supervisor's behavior culminated in a tangible employment action against the employee, the employer will, *ipso facto*, be vicariously liable for the supervisor's conduct. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004). A "tangible employment action" constitutes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 124. As explained in the previous section, it is unclear whether the hostile environment that Ms. Lupacchino allegedly experienced culminated in an adverse employment action.

Where the harassment does not culminate in a tangible employment action, however, the employer will not be liable for a supervisor's harassment so long as the employer establishes two elements: "that it (a) exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employee, or to avoid harm otherwise." *Id.* at 225. The employer bears the burden of proving both elements of this affirmative defense. *Mack*, 326 F.3d at 124-26.

There are many disputed facts regarding the preventive and corrective measures ADP claims it took. For example, while ADP asserts that it promptly followed up on Ms.

Lupacchino's complaints and investigated and verbally reprimanded Mr. Gay, Ms. Lupacchino responds that ADP's verbal reprimand of Mr. Gay was ineffective. *See* Def.'s 56(a)(1) Stmt. ¶27-29; Pl.'s 56(a)(2) Stmt. ¶27-29. As evidence in support of her claim, Ms. Lupacchino points to Mr. Gay's deposition testimony in which he denies that he was ever reprimanded. Thus, when asked at deposition the following question, "Mr. Kitzmiller also did not tell you that you were receiving a verbal warning for not behaving, right?" Mr. Gay responded, "That is correct." Gay Depo. at 61, Ex. 3 [doc. #34-1]. The parties also dispute whether ADP effectively separated Ms. Lupacchino and Mr. Gay. Def.'s 56(a)(1) Stmt. ¶ 34, 37, 52; Pl.'s 56(a)(2) Stmt. ¶ 34, 37, 52.

These, as well as other factual disputes, prevent the Court from concluding that ADP has established its affirmative defense as a matter of law. Therefore, the Court denies ADP's motion for summary judgment on Ms. Lupacchino's hostile work environment claims in Count One of the Complaint.

**Constructive Discharge**. By contrast, ADP is entitled to summary judgment on Ms. Lupacchino's constructive discharge claim. Constructive discharge of an employee occurs when "an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Mack,* 326 F.3d at 128 (citations and quotations omitted). In order to prevail on a constructive discharge claim, a plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 124 S.Ct. 2342, 2347 (2004). This is because "[u]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while

seeking redress." *Id*. at 2354 (internal quotation omitted).  "Constructive discharge also requires deliberate action on the part of the employer." *Whidbee,* 223 F.3d at 74.

Ms. Lupacchino's claim, as characterized by her attorney at oral argument, is based on the same events alleged in her hostile work environment and retaliation claims.  However, both the Supreme Court and the Second Circuit have emphasized that a constructive discharge claim must entail something more than what is required for an ordinary sexual harassment or hostile-environment claim.  *See Suders*, 124 S. Ct. at 2354; *Mack*, 326 F.2d at 128 (facts that supported hostile work environment claim were insufficient to make out claim for constructive discharge).  Ms. Lupacchino emphasizes two aspects of ADP's response that supposedly made her working conditions intolerable: (1) ADP's request for a "blanket medical authorization" while she was on paid leave; and (2) ADP's failure to take any remedial actions after receiving her CHRO complaint.  Pl.'s Mem. in Opp. Summ. J. at 26-27.  The Court is not persuaded by either of Ms. Lupacchino's arguments.

First, Ms. Lupacchino cannot show that ADP's request for medical authorization was a deliberate attempt to make her working conditions intolerable.  While the medical authorization form that ADP sent to Ms. Lupacchino is broad on its face, *see* Authorization to Disclose Medical Information, Ex. 1, [doc. #34-1], ADP's attorney confirmed at oral argument that it is the standard medical authorization form that ADP sends to all employees who seek leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.  There is no evidence whatsoever that in sending this standard form to Ms. Lupacchino, ADP sought to single her out.  Nevertheless, Ms. Lupacchino insists that the request was particularly offensive to her because she was not seeking FMLA leave but rather was simply seeking to use her sick leave.  Perhaps

that was Ms. Lupacchino's intent in taking her leave. However, Ms. Lupacchino's attorney conceded at oral argument that neither he nor Ms. Lupacchino ever told that to ADP or ever attempted to clarify her leave status with ADP. On these facts, a reasonable jury could not find that by merely asking Ms. Lupacchino to complete a standard medical authorization form while she was out on paid sick leave, ADP *deliberately* attempted to force her to resign or made her working conditions so intolerable that she was compelled to resign.

Even more damaging to Ms. Lupacchino's claim was her attorney's concession at oral argument that neither he nor his client made any efforts to contact ADP to narrow or limit the supposedly offensive scope of ADP's medical authorization form. Ms. Lupacchino had available avenues for resolving her concerns that she simply failed to explore. This is not the situation envisioned by the law of constructive discharge. An employer constructively discharges an employee only when "it purposefully creates working conditions so intolerable that the employee has *no option* but to resign." *Sure-Tan, Inc. v. National Labor Relations Bd.*, 467 U.S. 883, 894 (1984) (emphasis added). No such showing has been made here.

Second, Ms. Lupacchino's remaining claim is equally unpersuasive. She asserts that ADP's failure to acknowledge her complaints or to take remedial action after she submitted her CHRO complaint rendered her working conditions intolerable. Under some circumstances, an employer's failure to remedy harassment can constitute constructive discharge. *See Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 574-75 (8th Cir. 1997) (observing that continuing sexual harassment combined with management's indifference could cause reasonable jury to find constructive discharge). But the facts of this case do not support Ms. Lupacchino's claim. Ms. Lupacchino says that she considered herself discharged as of February 22, 2002, when she

received a letter from ADP threatening to terminate her salary, *see* Letter of 2/22/02, Ex. 1 [doc. #34-1]. Yet, this letter was sent only *three days* after Ms. Lupacchino had filed her CHRO complaint. If an employer is truly to be afforded an opportunity to remedy discrimination in the workplace, then surely the window of opportunity for such resolution must last longer than three days. At a minimum, a three-day lag in an employer's response does not evidence a *deliberate* attempt to force an employee's resignation. *See Petrosino*, 385 F.3d at 239-30 (a plaintiff "must at least demonstrate that the employer's actions were 'deliberate' and not merely 'negligen[t] or ineffective[ ].' ") (quoting *Whidbee*, 223 F.3d at 74).

Moreover, the Court seriously doubts that Ms. Lupacchino's working conditions on or about February 13, 2002 when she last reported to work rise to the level of unpleasantness required by constructive discharge case law. *See Suders*, 124 S.Ct. at 2347 (employee's working conditions must be "so intolerable that her resignation qualified as a fitting response"). Indeed, the undisputed facts show that by December of 2001, Ms. Lupacchino's interaction with Mr. Gay – the primary source of her discomfort – had been significantly reduced. Ms. Lupacchino and Mr. Gay had both been informed that Ms. Lupacchino no longer reported to Mr. Gay. *See* Lupacchino Dep. at 90-91, Ex. B [doc. #32]; Gay Dep. at 63, Ex. 3 [doc. #34-1]. And Ms. Lupacchino herself testified that as of December 11, her contact with Mr. Gay was limited to seeing him at the office Christmas party and his requests for her sales numbers on a few occasions. *See* Lupacchino Dep. at 109-10, Ex. B [doc. #32].

In any event, the fact that ADP actually continued to pay Ms. Lupacchino her full salary and benefits until March 29 clearly contradicts her claim that it intentionally sought to force her to resign on February 22. *See* Def.'s 56(a)(1) Stmt. ¶ 71; Pl.'s 56(a)(2) Stmt. ¶ 71. It defies

common sense that ADP would continue to pay Ms. Lupacchino, particularly after receiving her attorney's letter claiming constructive discharge, *see* Letter 3/8/02, Ex. 12 [doc. #34-1], if it had no interest in retaining her. *See Whidbee*, 223 F.3d at 74 (no constructive discharge where employer demonstrated in interest in retaining the plaintiff); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (finding no constructive discharge in part because evidence showed that defendant wanted employee to remain in its employ); *Martin v. Dupont Flooring Systems, Inc.*, No. Civ.A. 301CV2189 (SRU), 2004 WL 726903, at *9 (D. Conn. Mar. 31, 2004) (no constructive discharge where employer asked employee to stay and gave her time to reconsider her decision to leave). For these reasons, the Court grants summary judgment in favor of ADP on Ms. Lupacchino's claims for constructive discharge in Count Three of the Complaint.[2]

**Parallel State Law Claims**. In addition to her Title VII claims, Ms. Lupacchino also sues ADP for hostile work environment, retaliation and constructive discharge under the Connecticut Fair Employment Practices Act, ("CFEPA") Conn. Gen. Stat. 46a-51 *et seq*. Connecticut courts have interpreted CFEPA to mirror the coverage of Title VII. *See, e.g., Brittell v. Dept. of Correction*, 247 Conn. 148, 164 (Conn. 1998) ("In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60."); *Bigio v. Montagna*, No. CV00442522S, 2003 WL 22333197 (Conn. Super. Ct. Oct. 2, 2003) (Connecticut courts use same standard as applied by Federal Courts in

---

[2] As a result of this ruling, the Court need not address ADP's claim "that had ADP learned that [Ms. Lupacchino] was working full-time at Healthworks while she was out on leave her employment would have been terminated immediately," or how termination would affect Ms. Lupacchino's entitlement to front-pay or back pay. *See* Def.'s Mem. in Supp. Summ. J. at 33.

constructive discharge cases). Accordingly, for the same reasons discussed with respect to Ms. Lupacchino's federal claims, the Court grants summary judgment on Ms. Lupacchino's state law constructive discharge claim and denies summary judgment on her state law hostile work environment and retaliation claims.

### IV.

In conclusion, the Court GRANTS ADP's Motion for Summary Judgment [**doc. #28**] as to Ms. Lupacchino's claims for constructive discharge in Counts Three and Six of the Complaint, but the Court DENIES the motion as to her retaliation and hostile work environment claims in Counts One, Two, Four and Five.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut on: **January 21, 2005**.